STATE OF NORTH CAROLINA v. JOSE JESUS GARCIA LOPEZ

No. COA07-422

(Filed 5 February 2008)

**1. Evidence— drunken driving accident—defense testimony that defendant driving—irrelevant**

In a prosecution arising from an automobile accident and death involving drunken driving, the trial court did not err by excluding as irrelevant testimony from two defense witnesses who had been told by a passenger that defendant was the driver. The testimony does not create even an inference that the passenger was driving the car and is not inconsistent with the guilt of defendant.

**2. Sentencing— aggravating factor—use of weapon hazardous to more than one person—automobile**

The trial court did not err in a prosecution arising from a death involving drunken driving by submitting the aggravating factor that defendant knowingly created a great risk of death to more than one person by means of a device normally hazardous

to the lives of more than one person. It is well settled that this aggravating factor is proper within the context of motor vehicle collisions caused by intoxicated drivers.

### 3. Sentencing— prosecutor's closing argument—not prejudicial

There was no prejudicial error from the prosecutor's closing argument in defendant's sentencing for involuntary manslaughter and other offenses arising from an automobile accident involving driving. The argument involved the sentencing grid and a discussion of the merger doctrine, and its clear import was to ask the jury to find the aggravator so that the court could impose a higher sentence. While the trial court abused its discretion in allowing the argument, there was overwhelming evidence that defendant was operating his vehicle at a dangerously high rate of speed while illegally intoxicated, and there was no reasonable possibility of a different result without the instruction.

Judge ARROWOOD concurs in part, and concurs in the result in part.

Appeal by Defendant from judgments entered 30 May 2006 by Judge Ola M. Lewis in Columbus County Superior Court. Heard in the Court of Appeals 31 October 2007.

*Attorney General Roy Cooper, by Special Counsel Isaac T. Avery, III, for the State.*

*Nora Henry Hargrove for Defendant.*

STEPHENS, Judge.

Defendant appeals from three judgments entered following jury verdicts which found him guilty of four offenses. We find no prejudicial error in Defendant's trial or sentencing.

### FACTS

Defendant was indicted on one count each of second-degree murder, N.C. Gen. Stat. § 14-17, felony death by vehicle, N.C. Gen. Stat. § 20-141.4(a1), assault with a deadly weapon inflicting serious injury, N.C. Gen. Stat. § 14-32(b), and felony hit and run, N.C. Gen. Stat. § 20-166(a). Defendant was tried before a jury in May 2006. The trial was conducted in two phases: a guilt-innocence phase and a sentencing phase.

STATE v. LOPEZ

[188 N.C. App. 553 (2008)]

In the guilt-innocence phase, the State's evidence tended to show that at approximately 6:00 p.m. on 19 December 2004, Defendant was driving his car at a speed of approximately 80-100 miles per hour when he crossed a center line and collided with a car being driven by twenty-year-old Natalie Housand. Ms. Housand was killed in the collision, and her boyfriend was injured. At the time of the accident, Defendant had a blood alcohol concentration of 0.18. After the accident, Defendant went into the woods near the scene of the accident but later emerged and was arrested.

Defendant testified that he remembered very little about the accident, that the car which struck Ms. Housand's car belonged to him, and that he remembered being a passenger in the car at the time of the collision. He further testified that he remembered being with his brother, Victor Lopez, on the day of the accident. Defendant sought to introduce the testimony of Ms. Jeannie Bullard, a registered nurse at a Columbus County hospital. On *voir dire,* Ms. Bullard testified that Victor Lopez came to the hospital on 20 December 2004 and stated that he had been in an automobile accident the day before at approximately 5:00 p.m. Victor Lopez told Ms. Bullard that he had spent the night in the woods after the accident and that he "was a front seat passenger" in Defendant's car. Defendant also sought to introduce the testimony of Trooper Anthony Parrish who interviewed Victor Lopez after the accident. On *voir dire,* Trooper Parrish testified that Victor Lopez told him, through an interpreter, he was a passenger in Defendant's vehicle and that Defendant was the vehicle's driver. The trial court did not allow Ms. Bullard or Trooper Parrish to offer such testimony to the jury.

On the charge of second-degree murder, the trial court submitted to the jury a verdict sheet which permitted the jury to find Defendant guilty of second-degree murder, involuntary manslaughter, or misdemeanor death by motor vehicle, or to find Defendant not guilty. The jury found Defendant guilty of involuntary manslaughter and of the other three charges on which he had been indicted.

In the sentencing phase, the State presented no additional evidence but argued to the jury that it should find the aggravating factor that Defendant knowingly created a great risk of death to more than one person by means of a weapon or device—Defendant's car— which would normally be hazardous to the lives of more than one person. In so arguing, the State presented to the jury the sentencing grids for the crimes of which Defendant had been found guilty, outlined the effect of the finding of an aggravating factor, and explained

that through the doctrine of merger, Defendant would not be sentenced for both involuntary manslaughter and felony death by vehicle. The jury found the existence of the aggravating factor. Defendant then presented evidence of mitigating factors. The trial court found two factors in mitigation, but determined that the aggravating factor outweighed the mitigating factors. The trial court imposed aggravated sentences in each judgment, sentencing Defendant to a total of 59 to 81 months in prison.

## 1. EXCLUSION OF EVIDENCE

**[1]** Defendant first argues the trial court erred in excluding the testimony of Ms. Bullard and Trooper Parrish. The trial court excluded the testimony on the ground that it was irrelevant.

"All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by the Constitution of North Carolina, by Act of Congress, by Act of the General Assembly or by these rules." N.C. Gen. Stat. § 8C-1, Rule 402 (2003). "Evidence is relevant if it has any logical tendency, however slight, to prove a fact in issue." *State v. Smith*, 357 N.C. 604, 613, 588 S.E.2d 453, 460 (2003), *cert. denied*, 542 U.S. 941, 159 L. Ed. 2d 819 (2004). "In criminal cases, every circumstance that is calculated to throw any light upon the supposed crime is admissible. The weight of such evidence is for the jury." *Id.* at 613-14, 588 S.E.2d at 460 (quotation marks and citation omitted).

The trial court must determine if the proposed evidence has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401 (2003). "[A] trial court's rulings on relevancy . . . are not discretionary and therefore are not reviewed under the abuse of discretion standard[.]" *State v. Wallace*, 104 N.C. App. 498, 502, 410 S.E.2d 226, 228 (1991) (citation omitted), *appeal dismissed and disc. review denied*, 331 N.C. 290, 416 S.E.2d 398, *cert. denied*, 506 U.S. 915, 121 L. Ed. 2d 241 (1992). "Nevertheless, 'such rulings are given great deference on appeal.' " *State v. Streckfuss*, 171 N.C. App. 81, 88, 614 S.E.2d 323, 328 (2005) (quoting *Wallace*, 104 N.C. App. at 502, 410 S.E.2d at 228).

> "Evidence that another committed the crime for which the defendant is charged generally is relevant and admissible as long as it does more than create an inference or conjecture in this regard. It must point directly to the guilt of the other party. Un-

der Rule 401 such evidence must tend *both* to implicate another *and* be inconsistent with the guilt of the defendant."

*State v. Israel*, 353 N.C. 211, 217, 539 S.E.2d 633, 637 (2000) (quoting *State v. Cotton*, 318 N.C. 663, 667, 351 S.E.2d 277, 279-80 (1987)).

The excluded evidence does not point directly to the guilt of Victor Lopez, does not tend to implicate Victor Lopez in the commission of the crimes, and is not inconsistent with the guilt of Defendant. Neither Ms. Bullard nor Trooper Parrish testified that Victor Lopez told them he was driving Defendant's car. In fact, Victor Lopez told both Ms. Bullard and Trooper Parrish that he was a passenger in Defendant's car at the time of the accident. Moreover, Victor Lopez told Trooper Parrish that Defendant was driving the car. Such evidence does not even create an inference that Victor Lopez was driving the car. The trial court did not err in excluding this evidence, and Defendant's argument to the contrary is overruled.

## 2. SUBMISSION OF AGGRAVATING FACTOR

[2] Defendant next argues the trial court erred in submitting the aggravating factor to the jury because "[t]he evidence does not support a finding beyond a reasonable doubt that in its normal use, a motor vehicle is a hazardous device." *See* N.C. Gen. Stat. § 15A-1340.16(d)(8) (2003) (defining the aggravating factor at issue in the case at bar). Defendant made no such argument to the trial court, there arguing only that the trial court could not submit any aggravators to the jury because, given the date of the accident, the United States Supreme Court's decision in *Blakely v. Washington*, 542 U.S. 296, 159 L. Ed. 2d 403, *reh'g denied*, 542 U.S. 961, 159 L. Ed. 2d 851 (2004), left North Carolina without a constitutional means of aggravating Defendant's sentence. " '[W]here a theory argued on appeal was not raised before the trial court, the law does not permit parties to swap horses between courts in order to get a better mount in the appellate courts.' " *State v. Muhammad*, 186 N.C. App. 355, 358, 651 S.E.2d 569, 572 (2007) (quoting *State v. Holliman*, 155 N.C. App. 120, 123, 573 S.E.2d 682, 685 (2002)).

Notwithstanding Defendant's equine swap, "[i]t is well-settled that the use of the challenged aggravating factor within the context of motor vehicle collisions caused by legally intoxicated drivers is proper." *State v. Fuller*, 138 N.C. App. 481, 488, 531 S.E.2d 861, 866 (citations omitted), *disc. review denied*, 353 N.C. 271, 546 S.E.2d 120 (2000); *see also State v. Jones*, 353 N.C. 159, 164, 538 S.E.2d 917, 922

(2000) ("It is well settled in North Carolina that an automobile can be a deadly weapon if it is driven in a reckless or dangerous manner.") (citation omitted). In this case, the State presented ample evidence that Defendant was operating his vehicle in a reckless manner by driving at a high rate of speed while legally intoxicated. Moreover, " 'any reasonable person should know that an automobile operated by a legally intoxicated driver is reasonably likely to cause death to any and all persons who may find themselves in the automobile's path.' " *Fuller,* 138 N.C. App. at 488, 531 S.E.2d at 867 (quoting *State v. McBride,* 118 N.C. App. 316, 319-20, 454 S.E.2d 840, 842 (1995)). The trial court did not err in submitting the aggravating factor to the jury for its consideration.

3. STATE'S CLOSING ARGUMENT DURING SENTENCING PHASE

[3] Finally, Defendant argues the trial court abused its discretion in allowing the State, over Defendant's objection, to argue as follows in its closing argument during the sentencing phase:

Folks, I'm going to write up some numbers. These numbers are the—basically, the sentencing grid for the offenses that you found the Defendant guilty of.

. . . .

This is the involuntary manslaughter. Presumptive range is 13 to 16 months. Assault with a deadly weapon inflicting serious injury, presumptive range is 20 to 25 months. This is the hit and run. The presumptive range, 5 to 6 months. Now, there was a felony death by motor vehicle, and that merged in because it had a lot of the same elements of this manslaughter conviction, so it merges in here. All right. So, that's kind of already in; that's why I didn't put it up here.

The judge sentences within this presumptive range, and that's what I've highlighted for you, unless the State puts up an aggravating factor. Okay? We have to present to you an aggravating factor, and you have to find it beyond a reasonable doubt. Just like anything else that we present to you, you have to make a determination, we have to prove it to you beyond a reasonable doubt.

If we prove aggravators, which I've submitted one to you, then that gives the option for the judge to return a sentence in this range. Okay? It doesn't mean that's where it comes from, it just gives her that option.

Now, the State of North Carolina—I'm going to put a couple more numbers up here for you. We have a minimum and then we have a maximum. Okay. In other words, the minimum, say if the minimum was 13 months, there would be a corresponding maximum sentence that goes with that. All right. If we got up to this range, this aggravator, say we're in the aggravated range of 20, there would be a corresponding maximum that goes with that. And this one would be 24. This one would be 47. And this one would be 10. And these are all in months. Okay?

Defendant does not assert that the State misrepresented or inaccurately explained the law. Instead, Defendant maintains that the argument was *irrelevant* to a finding of the aggravating factor, that the presentation of the sentencing grids "alert[ed] the jury that [Defendant] may not get as much of a sentence of imprisonment as the jurors might want him to receive[,]" and that the discussion of merger let the jurors know "they were being 'shortchanged' on one of their verdicts." Defendant asks us to remand his case for a new sentencing hearing.

After the date of the accident and in response to the United States Supreme Court's decision in *Blakely*, 542 U.S. 296, 159 L. Ed. 2d 403, North Carolina's General Assembly amended N.C. Gen. Stat. § 15A-1340.16 effective 30 June 2005 to provide that "[i]f the defendant does not . . . admit [to the existence of an aggravating factor], only a jury may determine if an aggravating factor is present in an offense." 2005 N.C. Sess. Laws 145. Prior to the statutory revision, "special verdicts were the appropriate procedural mechanism under state law to submit aggravating factors to a jury." *State v. Blackwell*, 361 N.C. 41, 49, 638 S.E.2d 452, 458 (2006), *cert. denied*, —— U.S. ——, 167 L. Ed. 2d 1114 (2007). A special verdict is one "in which the jury makes findings only on factual issues submitted to them by the judge, who then decides the legal effect of the verdict." *Black's Law Dictionary* 1593 (8th ed. 2004).

As the jury is called upon to return a special verdict in the penalty phase of a capital case, the principles governing the propriety of jury arguments in those cases apply equally to the propriety of the arguments at issue in the case at bar. In such proceedings, "the trial court has broad discretion to control the scope of closing arguments[,]" *State v. Cummings*, 361 N.C. 438, 465, 648 S.E.2d 788, 804 (2007) (citing *State v. Allen*, 360 N.C. 297, 306, 626 S.E.2d 271, 280, *cert. denied*, —— U.S. ——, 166 L. Ed. 2d 116 (2006)), and the trial court errs only

upon a showing that its ruling could not have been the result of a reasoned decision. *Cummings*, 361 N.C. 438, 648 S.E.2d 788. As a general rule, "counsel is allowed wide latitude in the jury argument during the capital sentencing proceeding." *State v. Smith*, 351 N.C. 251, 268, 524 S.E.2d 28, 41 (citation omitted), *cert. denied*, 531 U.S. 862, 148 L. Ed. 2d 100 (2000). "While it is generally true that counsel's argument should not be impaired without good reason, *Watson v. White*, 309 N.C. 498, 507, 308 S.E.2d 268, 274 (1983), one 'good reason' to limit argument is its irrelevance." *State v. Price*, 326 N.C. 56, 83, 388 S.E.2d 84, 99, *judgment vacated on other grounds*, 498 U.S. 802, 112 L. Ed. 2d 7 (1990).

We agree with Defendant that the amount of punishment which the finding of an aggravating factor will empower a judge to impose and the effect of the merger doctrine on a defendant's convictions are irrelevant to the issue of a factor's presence in an offense.[1] *See State v. Rhodes*, 275 N.C. 584, 588, 169 S.E.2d 846, 848 (1969) (holding that in a trial's guilt-innocence phase, "[t]he amount of punishment which a verdict of guilty will empower the judge to impose is totally irrelevant to the issue of a defendant's guilt. It is, therefore, no concern of the jurors'."). "Jurors, as every trial judge knows, are always interested in the consequences of their verdict. As laymen, it is hard for them to understand that they have nothing to do with punishment." *Rhodes*, 275 N.C. at 591, 169 S.E.2d at 851. Although the Court in *Rhodes* was addressing arguments made in a trial's guilt-innocence phase, we believe the Court's observations also apply to the case at bar.

Moreover, although the State never directly asked the jury to find the existence of the aggravator so that the trial court could impose an elevated sentence, we think such is the clear import of the State's argument and that this argument is improper. The jury's conviction of Defendant on the charge of involuntary manslaughter, rather than on

---

1. The Supreme Court has held that a trial court does not err in allowing the State to accurately present the jury's role in the penalty phase of a capital trial, including informing the jury of the effect of its finding of an aggravating factor. *State v. McLaughlin*, 341 N.C. 426, 462 S.E.2d 1 (1995), *cert. denied*, 516 U.S. 1133, 133 L. Ed. 2d 879 (1996). Moreover, the State is allowed "to present argument for . . . sentence of death." N.C. Gen. Stat. § 15A-2000(a)(4) (2003). The jury's role in a capital case's penalty phase, however, is wholly different from the jury's role in returning a special verdict in the sentencing phase of a non-capital offense. *See* N.C. Gen. Stat. § 15A-2000(b) (2003) (tasking the jury in a capital case's penalty phase with determining whether aggravating factors exist, whether aggravating factors are outweighed by mitigating factors, and whether a defendant should be sentenced to death or life imprisonment).

the charge of second-degree murder on which Defendant was indicted, exposed Defendant to considerably less prison time than he otherwise could have received.[2] Considering that the accident resulted in the death of a twenty-year-old female, the State's argument could have served no other purpose than to inflame and appeal to the jury's passion. There is no rational basis for allowing the State to argue as it did, and the trial court abused its discretion in allowing the State to make this argument to the jury. *See State v. Monk*, 286 N.C. 509, 515, 212 S.E.2d 125, 131 (1975) ("[C]ounsel [may not] argue principles of law not relevant to the case.") (citation omitted).

Having concluded that the trial court erred in allowing the State to so argue, we must now determine if Defendant was prejudiced as a result of the argument and whether he is entitled to a new sentencing hearing. The test for whether an error is prejudicial or harmless is whether "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." N.C. Gen. Stat. § 15A-1443(a) (2003). Based on the overwhelming evidence that Defendant was operating his vehicle at a dangerously high rate of speed while legally intoxicated, we conclude there is no reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which this appeal arises. Any rational jury would have found the existence of the aggravating factor even in the absence of the State's improper closing argument. Thus, Defendant is not entitled to a new sentencing hearing.

NO ERROR IN TRIAL; NO PREJUDICIAL ERROR IN SENTENCING.

Judge CALABRIA concurs.

Judge ARROWOOD concurs in the portion of the opinion finding no error in trial and concurs in the result with respect to the sentencing phase issues.

---

2. The presumptive range of imprisonment upon a conviction for second-degree murder for a defendant with the same prior record level as Defendant in the case at bar is between 125-198 months. N.C. Gen. Stat. § 14-17 (2003); N.C. Gen. Stat. § 15A-1340.17 (2003).